**In re BROADMOOR COUNTRY CLUB & APT., Debtor.**

**Bankruptcy No. 93–20045–2–11.**

United States Bankruptcy Court, W.D. Missouri.

Aug. 26, 1993.

Michael F. Flanagan, Polsinelli, White, Vardeman & Shalton, Kansas City, MO, for debtor.

Paul M. Hoffmann, Smith, Gill, Fisher & Butts, Kansas City, MO, for Colonial Bank.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

The Debtor filed a voluntary Chapter 11 petition under the Bankruptcy Code on January 26, 1993. This Court set a May 3, 1993 proof of claim bar date pursuant to Bankruptcy Rule 3003(c)(3). Colonial Bank ("Colonial") filed three proofs of claim on May 11. On May 17, Colonial filed a "Motion to Enlarge Time to File Proofs of Claim or, in the Alternative, Deem Claims Timely Filed." The Debtor filed an objection. A hearing was scheduled and held May 19, 1993 at which time the Court heard statements of counsel, evidence from a witness and legal arguments.

### Facts

The material facts are not in dispute. Colonial is a holder of three promissory notes signed by the Debtor's general partner, Town & Campus International, Inc. which were validly assigned to Debtor, Broadmoor Country Club and Apartments. The first note is dated January 1, 1986 in the amount of $200,000; the second note is dated December 31, 1987 in the amount of $190,000; and, the third note is dated January 10, 1988 in the amount of $250,000. Colonial claims that the present amount due and owing on the notes with interest is $339,311.09, $292,293.90, and $383,852.44 respectively.

The Debtor defaulted on two of the notes in 1992. After demand for payment, Colonial instituted suit in St. Louis County Circuit Court. On November 18, 1992, the circuit court entered partial summary judgment for Colonial on the issue of Debtor's liability.

In January 1993, the Debtor filed a voluntary Chapter 11 petition. On February 10, 1993, the Debtor filed Schedules listing an outstanding unsecured debt to Colonial of $1,087,494. This included both undisputed claims and the three notes which were listed as disputed and unliquidated claims on Schedule F.

Colonial attended the first meeting of the creditors. At that time, the Debtor admitted that the only dispute regarding the notes related to the interest rate to be charged on all three and the maturity date on one of them.

Colonial filed an Entry of Appearance and Request for Service of Papers on February 23. Colonial appeared before the Court at a hearing on February 26, where the Court considered a number of motions including the use of cash collateral. Colonial advised the Court that it was asserting a claim in excess of $1,000,000 against the Debtor. Also on February 26, the Court set a May 3 proofs of claim bar date.

Colonial's counsel received the bar date notice and noted "5/3" on his daily calendar. He carried the notation on his daily calendar each day from March 15 until April 5. When counsel copied the bar date from April 5 to April 6, he mistakenly wrote "5/13."

Colonial was in regular contact with the Debtor regarding Colonial's claim. Counsel for Colonial produced various letters and billing statements evidencing this contact.

On May 11, eight days after the bar date, Colonial filed three proofs of claim for the notes and mailed copies to Debtor. Upon receipt, the Debtor called Colonial on May 13 to inform counsel that the bar date had passed. On May 17, Colonial filed a "Motion to Enlarge Time to File Proofs of Claim or, in the Alternative, Deem Claims Timely Filed." Colonial argued that the time for filing should be enlarged to include May 11 because the late filing was the product of excusable neglect. See Rule 9006(b)(1). Alternatively, Colonial asked the Court to consider the claims as "informally filed." The Debtor objected.

The Debtor filed its disclosure statement and reorganization plan on July 26, 1993. Debtor's disclosure statement continued to include Colonial's claims on the three notes listed as disputed.

### Discussion

■ A creditor who holds any claim or interest in the Debtor or the Debtor's property whose claim is either unlisted or listed

as disputed, contingent or unliquidated must file a proof of claim within the time set by the court. Bankr.R. 3003(c). Any creditor who fails to file a proof of claim by the bar date loses creditor status, and cannot participate in voting or distribution. Bankr.R. 3003(c).

The court may in its discretion enlarge the time to file claims on a showing of cause if such a request is made before the bar date. *See* Bankr.R. 3003(c)(3) and 9006(b)(1)(1). The court may "on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect." Bankr.R. 9006(b)(1)(2).

▇ The Supreme Court addressed "excusable neglect" under Rule 9006 in *Pioneer Investment Services Co. v. Brunswick Assoc.*, —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). The Supreme Court found that the excusable neglect standard is not limited to situations where the failure to timely file is due to circumstances beyond the control of the filer. *Id.* at ——, 113 S.Ct. at 1494. The term "neglect" encompasses some amount of negligence by definition. *Id.* at ——, 113 S.Ct. at 1495.

The Court in *Pioneer* found that what neglect is "excusable" is an equitable determination based on the facts and circumstances surrounding the party's omission. *Id.* at ——, 113 S.Ct. at 1498. The court below used the *Dix* factor test to determine that an attorney who filed a proof of claim twenty days late as the result of an upheaval in his practice was excusable neglect. *Id.* at ——, 113 S.Ct. at 1492. The *Dix* factors include:

(1) whether granting the delay will prejudice the debtor;

(2) the length of the delay and its impact on efficient court administration;

(3) whether the delay was beyond the reasonable control of the person whose duty it was to perform;

(4) whether the creditor acted in good faith; and

(5) whether clients should be penalized for their counsel's mistake or neglect.

*In re Dix*, 95 B.R. 134, 138 (9th Cir. BAP 1988). In *Pioneer*, the Court found the first four *Dix* factors to be appropriate considerations to determine excusable neglect. —— U.S. at —— – ——, 113 S.Ct. at 1498–99. However, the Court explicitly rejected the fifth factor. *Id.* at ——, 113 S.Ct. at 1499.

▇ It is important to note the weight that the Court gave to the four *Dix* factors. Factor three encompasses the "circumstances beyond the filer's control" test rejected by the Court. This factor alone will not justify the denial of a time extension request, however, factor three and any *one* of the other factors will. *See Id.* at ——, 113 S.Ct. at 1500. The Supreme Court found that factors one, two and four weighed in favor of time extension. *Id.* at ——, 113 S.Ct. at 1498. Factor three weighed against it because the Court did not believe that upheaval in a law practice removes filing on time from an attorney's control. *Id.* at ——, 113 S.Ct. at 1499. With only factor three weighed against time extension, the Court affirmed the request approval below. *Id.*

The Eighth Circuit recently applied the *Pioneer* standard in *In re Harlow Fay, Inc.*, 993 F.2d 1351 (8th Cir.1993). In *Harlow Fay*, the court affirmed both the district court and the bankruptcy court's denial of a time extension for an attorney who filed late because of an upheaval in his practice. *Id.* The attorney had requested four time extensions; and the first two requests had been granted. *Id.* at 1352. Without a ruling on the third request, the attorney made a fourth request which the court did not rule upon either. *Id.* The attorney filed four days after the date in his fourth request. *Id.* Thus, even if the time extension requests had been granted, the attorney would have filed late. *See Id.* However, neither request had been granted, and the attorney filed 38 days late (a total of 65 days from the original, unextended due date). *Id.*

In *Harlow Fay*, the Eighth Circuit did not explicitly apply the *Dix* factor test. The court found, based upon the Supreme Court's discussion of the third Dix factor,

that an upheaval in the attorney's law practice was an insufficient reason to file late. *Id.* at 1352–53. The court seemed to infer that the error was completely in counsel's control. *See Id.* at 1353. Additionally, the attorney's failure to determine the status of his time extension requests, and his failure to meet even those deadlines seems to indicate a lack of good faith (*Dix* factor four). With limited discussion, the Eighth Circuit affirmed the request denial below. *Id.*

In the present case, there was no evidence introduced that suggests there was any prejudice to the Debtor. Colonial was in regular contact with the Debtor throughout the proceedings. The Debtor was aware that Colonial would be asserting these claims, and did not file its disclosure statement and plan until July 26 which listed Colonial's claims. The Debtor's proposed plan treats all unsecured creditors equally, and Colonial's claims would not necessarily alter that treatment. The Court finds no prejudice to the Debtor by Colonial's late filings. Thus, the first *Dix* factor weighs in Colonial's favor. *See In re Earth Rock, Inc.*, 153 B.R. 61, 63 (Bankr.D. Idaho 1993) (no prejudice to debtor where late filing unsecured creditor was included in disclosure statement and claim inclusion would not alter plan distribution).

Applying the second factor, Colonial's filing was only eight days late, earlier than that of the attorney in *Pioneer* who filed 20 days late. Here as in *Pioneer*, there has been no indication that court administration has been hampered. Again, the disclosure statement and plan were not filed until July 26, long after Colonial's May 11 filing. The Court finds no adverse impact on court administration. The second *Dix* factor weighs in Colonial's favor. *See In re Earth Rock, Inc.*, 153 B.R. at 63–64 (no substantial impact on efficient court administration by unsecured creditor filing 8 months late where claim listed in disclosure statement and claim inclusion would not alter plan distribution).

Applying the third factor, Colonial knew the bar date. Colonial received the bar date notice, and Colonial's attorney entered it into his personal calendar. Colonial admits and the Court finds that the error and delay were entirely within the reasonable control of counsel. The third *Dix* factor weighs against Colonial.

Finally, under the fourth factor, Colonial's good faith has not been questioned. Based on testimony at trial and the facts and circumstances of this case, the Court finds that Colonial acted in good faith. Thus, the fourth *Dix* factor weighs in favor of Colonial's request for time enlargement.

■ This case, as in *Pioneer*, has only the third factor weighing against the enlargement of time. The teaching of *Pioneer* is that excusable neglect is not limited to those circumstances where untimely filing is due to circumstances beyond the attorney's control. Thus, as in *Pioneer*, the request for enlargement of time to file should be granted.

■ The Debtor has advocated a strict construction of Rule 9006 and strict enforcement of the bar date. The Debtor has referred this Court to *In re Standard Insulations, Inc.*, 138 B.R. 947 (Bankr. W.D.Mo.1992) to demonstrate that even claims filed one day late should be barred. The Debtor's reliance on *Standard Insulations* is misplaced. *Standard Insulations*, decided before *Pioneer*, applied the restrictive definition of excusable neglect rejected by the Supreme Court. *Pioneer*, ⸺ U.S. at ⸺, 113 S.Ct. at 1495; *Standard Insulations*, 138 B.R. at 956–57. Moreover, *Standard Insulations* is factually distinct. *Standard Insulations* involved over 24,000 personal injury claims against an asbestos manufacturer where nearly 1000 claims were late filed. 138 B.R. at 950. The court had allowed five years to file proofs of claims and had established numerous procedures to process claims. *Id.* at 955. After the threshold determinations by the bankruptcy court, the claims were to be transferred to the district court for jury trials. *See Id.* The concerns for judicial economy posed by thousands of personal injury claimants are not present in the case at hand.

Colonial has also suggested that its claim has been "informally filed." Because the Court has been persuaded to enlarge the time for filing, the informal claim issue need not be addressed.

### Conclusion

Based on the discussion above, Colonial's "Motion to Enlarge Time to File Proofs of Claim" is hereby GRANTED, and the time to file proofs of claim extended to include claims filed May 11, 1993.

The foregoing Memorandum Opinion constitutes Findings of fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.

SO ORDERED.